## In re EN SK SONG.

## In re MASCARENAS.

(District Court, S. D. California, S. D. February 24, 1921.)

### No. 324.

**1. Aliens ⟶61—Army service does not render Korean eligible for naturalization; "free white person;" "any alien."**

The use of the term "any alien" in the several provisions of naturalization in Act June 29, 1906, § 4, subd. 7, as added by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), is not intended to enlarge the right to naturalization, as restricted by Rev. St. § 2169 (Comp. St. § 4358), to "free white persons" and persons of African nativity or descent, except in the specific cases of native-born Filipinos and Porto Ricans therein mentioned, and a native Korean is not eligible for naturalization, even though he served in the army during the recent World War.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Any; White Person.]

**2. Aliens ⟶68—Filipino may not be naturalized until two years after declaration of intention.**

A native-born Filipino, on application for naturalization under Act May 9, 1918, § 4, subd. 7 (Comp. St. § 4352), must present "the required declaration of intention," which must have been made not less than two years prior to his application.

In the matter of the petitions of En Sk Song and Simeon Ogbac Mascarenas for naturalization. Denied, without prejudice to renewal by Mascarenas.

Frederick K. Jones, of Los Angeles, Cal., Naturalization Examiner. Applicants, in pro per.

BLEDSOE, District Judge. These two cases, though not similar in all their details, both involve a construction of the act of Congress of May 9, 1918, amending the Naturalization Law (40 Stat. 542), and therefore will be considered together.

In the Song case, the applicant is a native of Korea and subject of Japan, and an honorably discharged soldier from the United States Army, having served during the recent war. In the Mascarenas case, the applicant is a native-born Filipino over the age of 21 years, who has served 3 years in the United States Navy and is still in the service. He made his declaration of intention to become a citizen on November 16, 1920, and 3 days thereafter filed his application for naturalization. The question in the Song case is whether the petitioner, being a Korean, and therefore a member of the Mongolian race, is entitled to citizenship at all under our law, even though he may have served with credit in the Army during the recent war. The question in the Mascarenas case is whether the usual requirement of at least two years' lapse of time between the making of the declaration of intention and the petitioning for naturalization shall apply in the case of a Filipino serving in the United States Navy.

[1] By the act of Congress of June 29, 1906 (34 Stat. 596), a pronounced departure in the matter of the procedure to be followed in naturalizing aliens was ordained. The action then taken was intended to

provide "for a uniform rule for the naturalization of aliens throughout the United States." ·U. S. v. Morena, 245 U. S. 392, 38 Sup. Ct. 151, 62 L. Ed. 359. It was concerned with matters of procedure almost entirely: The requirements of the Revised Statutes providing for at least 5 years' residence in the United States, and for the making of the declaration of intention at least 2 years prior to the application for final citizenship papers (section 2165, R. S.), were substantially reincorporated into the new provisions. Section 2169, R. S. (Comp. St. § 4358), originally limiting the privileges of naturalization to "free white persons," and later to persons of African nativity or descent in addition (see In re Singh [D. C.] 257 Fed. 209, 210), was left intact.

In 1918, Congress again amended the Naturalization Law; this time it was made easier and less burdensome for those coming to the defense of our flag in the then existing state of war to become citizens of our country. In that behalf, by the act of May 9; 1918 (40 Stat. 542), a number of subdivisions were added to section 4 of the act of June 29, 1906 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), supra. Therein it was provided, in substance, that certain classes of aliens might be naturalized under certain specified conditions as follows:

"(1) Any native-born Filipino of the age of twenty-one years and upwards, who has declared his intention to become a citizen of the United States and who has enlisted or may hereafter enlist in the United States Navy, * * * and who, after service of not less than three years, may be honorably discharged therefrom, * * * or

"(2) Any alien, or any Porto Rican not a citizen of the United States, of the age of twenty-one years and upwards, who has enlisted or entered or may hereafter enlist in or enter the armies of the United States, * * * or in the United States Navy or Marine Corps, * * * or who has served for three years on board of any vessel of the United States government, * * * may, on presentation of the required declaration of intention, petition for naturalization without proof of the required five years' residence within the United States if upon examination by the representative of the Bureau of Naturalization, in accordance with the requirements of this subdivision it is shown that such residence cannot be established.

"(3) Any alien serving in the military or naval service of the United States during the time this country is engaged in the present war may file his petition for naturalization without making the preliminary declaration of intention and without proof of the required five years' residence within the United States;

"(4). Any alien declarant who has served in the United States Army ·or Navy, or the Philippine Constabulary, and has been honorably discharged therefrom, and has been accepted for service in either the military or naval service of the United States on the condition that he becomes a citizen of the United States, may.file his petition for naturalization upon proof of continuous residence within the United States for the three years immediately preceding his petition; * * *

"(4) And any alien, or any person owing permanent allegiance to the United States embraced within this subdivision, may file his petition for naturalization in the most convenient court without proof of residence within its jurisdiction, * * * provided he appears with his two witnesses before the appropriate representative of the Bureau of Naturalization and passes the preliminary examination," etc.

"(5) Any alien, who, at the time of the passage of this act, is in the Military service of the United States, who may not be within the jurisdiction of any court authorized to naturalize aliens, may file his petition for naturalization without appearing in person in the office of the clerk of the court and·shall not be required to take the prescribed oath of allegiance in open court," etc.

The above are all contained in and constitute the essence of the detailed and somewhat complicated provisions of the "seventh" subdivision of section 1 of the above-mentioned act. Section 2 of the same act after providing for the express repeal of certain provisions of certain statutes contained the following language:

"That all acts or parts of acts inconsistent with or repugnant to the provisions of this act are hereby repealed; but nothing in this act shall repeal or in any way enlarge section 2169 of the Revised Statutes, except as specified in the seventh subdivision of this act and under the limitation therein defined."

The claim is insistently made that by the language of said subdivision 7, designated hereinabove as paragraph (3), Congress was intending to confer the privilege of naturalization upon "any alien," of whatsoever race, provided only he served in our Army or Navy during the time of the recent war; in other words, that as to all persons so serving, there was a complete repeal of the provisions of section 2169 limiting naturalization to "free white persons" and "persons of African descent."

Much earnest and persuasive argument is indulged in, so far as the question of mere policy is concerned, to the effect that any alien, irrespective of his race, who may have bared his breast to the bayonet of the enemy during the recent war in our defense is thereby entitled as a matter of right and of justice to the privilege of citizenship. With that question of policy, however, I feel that the courts are in no wise concerned. The argument made should be addressed to the Legislature of the land. It is our function merely to determine as best we may the classes of persons that under existing law are admissible to citizenship, and having determined that, to deny the privilege to all other classes.

Aside from the question of the general policy involved, the main force of the argument comes from the use of the phrase "any alien," etc., as indicated hereinabove, and the claim is made that by the use of that language Congress gave indubitable evidence of its intention to include every alien of whatsoever race within the privilege then being accorded. However, the same language, to wit, "any alien," possessing certain qualifications as to service in the military or naval forces, was used in the act of July 26, 1894 (28 Stat. p. 124). It was never, so far as I am advised, contended that such comprehensive language was in any wise a repeal by implication of the strict provision of section 2169, which had always controlled and limited by its very terms all applications for naturalization. So, also, the comprehensive phrase "any alien," as being entitled to the privileges of citizenship upon complying with certain required conditions precedent, has been repeatedly used by Congress from time to time. See paragraphs 5 and 6, § 2165; sections 2166, 2167, and 2168, R. S. It has never been held, however, either judicially or administratively, that such language was to be regarded as in any wise repealing the limitation placed upon the general right of naturalization expressed by the definite and limiting language of section 2169, supra. Repeals by implication are not favored, and I am persuaded that, if nothing more were contained in the law than the subdivision 7 of the act of May 9, 1918, the privilege of naturalization

would still have to be limited by the terms of section 2169. But Congress made assurance doubly sure, so to speak, by the provision above noted contained in section 2 of the act of May 9th, and thereby expressly recognized and insisted upon, as a national declaration of policy, the continued and controlling efficacy of section 2169, except in the instance referred to, and that instance, I am persuaded, is the privilege then for the first time accorded to native-born Filipinos.

Filipinos, of course, are members of the Malay or brown race. See Report of Immigration Commission, Senate Document 662, 61st Congress, Third Session. And under the terms of section 2169, except in the presence of the exception created by subdivision 7 of the act of May 9, 1918, they would have been denied citizenship. If Congress, in the enactment of subdivision 7, had intended to make it possible for aliens of every race to become citizens, merely through participation in the war in our Army or Navy, it would have been very easy for it to have said so. Furthermore, if such had been the general intention, to be gathered from the comprehensive language actually used in paragraph (3) above quoted, the detailed provisions respecting the Filipinos and the Porto Ricans would have been unnecessary. The mere incorporation of those detailed provisions, taken in connection with the careful language of the saving clause respecting section 2169, leads me to conclude that Congress was not intending, even as a recognition of loyal service performed during the war, to open wide the gates to citizens of every race and nationality who might have served under our flag. Moreover, a careful consideration of the wording of paragraph (3) of said subdivision 7, viewed by itself, makes it apparent that the purpose of Congress in that particular behalf was not to provide for the admission of aliens generally, who had served with us in the World War, but merely to provide that those of them who were otherwise eligible to admission might be admitted without being required to execute the usual preliminary declaration, and without completing the usual period of residence within the confines of the United States.

The applicant Song, being a native of Korea, and therefore of the Mongolian race (see Report of Immigration Commission, supra), is not a "free white person" (see In re Singh, supra), and therefore, not being eligible within the provisions of section 2169, must be denied citizenship.

[2] The contention of Mascarenas is that under the wording of the seventh subdivision of the act of May 9, 1918, he is entitled to file his petition for naturalization at any time after making his declaration of intention; i. e., he is not required to wait at least two years. Section 2165, R. S.; section 4, Act June 29, 1906.

This claim is in the teeth of the language of section 4 just cited, and is also contrary to the uniformity expected and to be sought in the naturalization law. U. S. v. Morena, supra. Furthermore, it seems to me to be in conflict with the express provisions of the subdivision relied upon, because, as hereinabove shown, the native-born Filipino, permitted to obtain citizenship, may petition therefor only "on presentation of the required declaration of intention." The required declaration of intention, I am constrained to hold, is the declaration specified in

subdivision 2 of section 4 of the act of June 29, 1906, above adverted to, which must be taken out not less than two years prior to the filing of the petition for naturalization.

The petition of Mascarenas, therefore, will be denied, without prejudice to its renewal when the required time shall have elapsed.